1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERICA ANN WINTERS FREEHOFFER,          No.  2:18-cv-2391-EFB

12                     Plaintiff,

13         v.                                ORDER

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                      Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her applications for a period of disability and Disability Insurance

20   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

21   Social Security Act.  The parties have filed cross-motions for summary judgment.  ECF Nos. 19

22   & 20.  For the reasons discussed below, plaintiff's motion for summary judgment is granted, the

23   Commissioner's motion is denied, and the matter is remanded for further proceedings.

24   I.    Background

25         Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had

26   been disabled since February 17, 2013.  Administrative Record ("AR") 221-238.  Her

27   applications were denied initially and upon reconsideration.  Id. at 122-26, 129-35.  A hearing

28   was subsequently held before administrative law judge ("ALJ") Daniel G. Heely.  Id. at 35-56.

                                                1

Plaintiff was represented by counsel at the hearing, at which plaintiff and a vocational expert testified. *Id.*

On September 25, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 15-28.  The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since February 17, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971, *et seq.*).

   * * *

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant has the following severe impairments: bipolar disorder with psychotic features; major depressive disorder with psychotic features; post-traumatic stress disorder (PTSD); paranoid schizophrenia; acute stress disorder; anxiety disorder; obesity; blood-clotting disorder; and obstructive sleep apnea (20 CFR 404.1520(c) and 416.920(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but she can never climb ladders, ropes, or scaffolds. She can only occasionally climb ramps and stairs. She can never work around hazards, such as dangerous moving machinery and unprotected heights. She is limited to work that has a Specific Vocational Preparation level (SVP) 1 or 2 and can be learned on the job in a month or less. She is also limited to no more than occasional contact with the public, coworkers, and supervisors.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7. The claimant was born on [in] 1979 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

* * *

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 18-28.

Plaintiff's request for Appeals Council review was denied on June 28, 2018, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.   Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.   Analysis

Plaintiff's motion raises two arguments. First, she argues that the ALJ erred in weighing the medical opinion evidence. Second, she argues that the ALJ erred in failing to set forth clear and convincing reasons for discrediting her subjective complaints. ECF No. 19-2.

/////

4

1        A.      Background

2        Plaintiff worked as a property manager until June 2012, at which time she discovered the

3   body of a tenant who had committed suicide.  AR 378.  Following the event, plaintiff was

4   diagnosed with post-traumatic stress disorder, paranoid schizophrenia, and acute stress disorder,

5   and she eventually stopped working.  *Id*.  In relation to her claim for workers compensation, she

6   was examined by several mental health practitioners.

7        In July 2013, plaintiff underwent a psychiatric examination by Andrew Abarbanel, M.D.

8   AR 390-401.  Dr. Abarbanel concluded that plaintiff was totally temporarily disabled due to

9   Major Depressive Episode, PTSD, and Paranoid Schizophrenia.  *Id*. at 398.  He noted that

10  plaintiff was responding well to treatment and opined that she could possibility return to work so

11  long as she continued to participate in group work and medication treatment.  *Id*. at 399-400.

12       Dr. Susan Barron, Ph.D., an examining psychologist, performed a psychological

13  evaluation in early 2014.  *Id*. at 478-97.  Based on the evaluation, Dr. Barron opined plaintiff was

14  temporarily partially disabled until April 1, 2014.  *Id*. at 493.  She concluded plaintiff was limited

15  to working 20 hours a week, was not to be placed in any supervisory capacity, needed additional

16  rest breaks to minimize stress, and should avoid complex or challenging tasks.  *Id*.  Dr. Barron

17  also noted that plaintiff had not yet reached maximum medical improvement, and that these work

18  restrictions should remain in place for at least six weeks.  *Id*.

19       Plaintiff was evaluated multiple times by examining psychologist Dr. James O'Dowd,

20  Psy.D.  *Id*. at 498-547.  In April 2014, Dr. O'Dowd opined that plaintiff continued to be totally

21  temporarily disabled through June 1, 2014, but he stated that plaintiff's condition should steadily

22  improve with treatment.  *Id*. at 504.  After the second evaluation, Dr. O'Dowd opined that

23  plaintiff had moderate impairments in carrying out activities of daily living, concentration

24  functions, and social functions, but was only minimally impaired in social functions.  *Id*. at 523-

25  25.  He also expressed doubt that plaintiff would be able to return to prior employment, noting

26  that "[d]espite months after months of inpatient and partial hospitalization treatment and

27  psychotropic treatment, [plaintiff's] symptoms remain acute."  *Id*. at 527.  Ultimately, he

28  concluded plaintiff was "permanent and stationary."  *Id*. at 527.  After evaluating plaintiff again

1   in July 2014, Dr. O'Dowd concluded that plaintiff remained disabled. *Id*. at 532. In September

2   2014, he concluded plaintiff had reached maximum medical improvement and was partially

3   disabled. *Id*. at 537.

4        Dr. O'Dowd conducted his last evaluation of plaintiff in January 2015. *Id*. at 539-44. Dr.

5   O'Dowd opined at that time that plaintiff was not impaired in performing simple and repetitive

6   tasks and following and comprehending instruction. *Id*. at 543. He also opined that plaintiff was

7   moderately impaired performing complex and varied tasks; relating to other people beyond giving

8   and receiving instructions; and influencing people. *Id*. Significantly, Dr. O'Dowd concluded that

9   due to plaintiff's depression, anxiety, and medication, she would need an understanding

10   supervisor when it comes to making independent evaluations or decisions. *Id*. at 543-44. He also

11   found that plaintiff required a low stress, low pressure job and was limited to working only four

12   hours a day. *Id*. at 543.

13        In May 2015, Dr. Abarbanel conducted another psychiatric examination. *Id*. at 552-70.

14   Based on his examination and review of plaintiff's recent medical records, Dr. Abarbanel

15   concluded that plaintiff was currently unable to work, and that she had been totally temporarily

16   disabled since 2012. *Id*. at 567-58. He noted that objective factors precluding plaintiff from

17   working included inability to attend, slowing of cognition and movement, avoidance of work

18   activities, preoccupation with topics related to her psychological injury, agitation, tearfulness,

19   somnolence, and speaking of her fears and difficulties in a rapid, loud voice. *Id*. at 567. Dr.

20   Abarbanel also opined that continuing psychotherapy and treatment with medication might permit

21   plaintiff to return to work, but not in the near future. *Id*. at 569.

22        In February 2016, plaintiff's nurse practitioner, Kelly Keller, completed a medical source

23   statement. *Id*. at 836-37. Therein, Ms. Keller stated that she had been seeing plaintiff on a

24   weekly basis since 2012. *Id*. at 837. It was Ms. Keller's opinion that plaintiff had a poor ability

25   to understand and remember very short and simple instructions; sustain concentration and task

26   persistence; interact with supervisors, coworkers, and the public; adapt to changes in the

27   workplace; and be aware of hazards and react appropriately. *Id*. at 836-37.

28   /////

1   Another psychological evaluation was performed in February 2017, this time by Dr. Ryan

2   Kolakoski, Psy.D. *Id*. at 1224-68.  Dr. Kolakoski found that plaintiff had marked impairments in

3   activities of daily living, social functioning, concentration, adaptation. *Id*. at 1261.  He further

4   concluded that plaintiff's psychiatric impairment required her to have the following work

5   restrictions:  part-time schedule, flexible schedule, frequent feedback on performance by an

6   understanding supervisor, additional time to complete tasks, and time to connect with co-workers.

7   *Id*. at 1266.

8   The record also contains opinions from two non-examining physicians, Dr. Thomas Clark,

9   Ph.D. and Dr. Joshua Schwartz, Ph.D.  AR 51-71, 72-86, 89-103, 104-118.  Dr. Clark and Dr.

10  Schwartz both reviewed the medical records submitted in connection with plaintiff's initial

11  application for benefits and concluded that plaintiff's mental impairments were not severe.  *Id*.

12  Both physicians opined that plaintiff could understand, retain, and carryout simple instruction;

13  perform routine tasks on a sustained basis; cooperate effectively with public and co-workers in

14  completing simple tasks; and adjust to the mental demands of most new tasks.  *Id*. at 68-69, 84,

15  100, 115.

16  B.    Relevant Legal Standards

17  The weight given to medical opinions depends in part on whether they are proffered by

18  treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

19  1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

20  greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80

21  F.3d 1273, 1285 (9th Cir. 1996).  An ALJ may reject an uncontradicted opinion of a treating or

22  examining medical professional only for "clear and convincing reasons that are supported by

23  substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  In

24  contrast, a contradicted opinion of a treating or examining medical professional may be rejected

25  for "specific and legitimate" reasons that are supported by substantial evidence. *Id*.  "The ALJ

26  can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

27  evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d

28  648, 654 (9th Cir. 2017) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

1    C.    Discussion

2        Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the

3    opinions from examining physicians Dr. Barron, Dr. O'Dowd, Dr. Abardanel, and Dr. Kolakoski,

4    and the treating opinion from nurse practitioner Ms. Keller.  ECF No. 19-2 at 12-25.

5        After providing a brief summary of Dr. Barron, Dr. O'Dowd, Dr. Abardanel, and Dr.

6    Kolakoski's opinions, the ALJ determined:

7    8    9    10    11    12

> These opinions are given little weight because they are contradicted
> by the generally adequate mental functioning that the claimant
> exhibited during the adjudicative period.  In addition, the opinions
> are inconsistent with the general effectiveness of the claimant's
> dialectical behavior therapy and psychotropic medications.
> Moreover, the opinions are inconsistent with claimant's admitted
> ability to help take care of two young children, drive a car, live with
> others, volunteer at her children's school, go out to eat, perform light
> housework, and prepare simple meals.  Furthermore, a finding of
> disability is an ultimate issue that is reserved to the commissioner.

13    AR 25.

14        The ALJ's first reason—that the opinions are contradicted by evidence of "adequate

15    mental functioning"—is based on an inaccurate characterization of the overall record.  *See*

16    *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he treatment records must be viewed

17    in light of the overall diagnostic record.").  As observed by the ALJ, mental status examinations

18    frequently documented several normal findings, including, *inter alia*, linear thought process,

19    normal speech, cooperative attitude, fair or good cognitive ability, and appropriate grooming and

20    attire.  AR 22; *see generally* AR 409-460, 860-83.  But these treatment records, as well as other

21    medical records, also document significant mental health symptoms.  Indeed, the ALJ personally

22    observed, in an earlier section of the decision, that "[d]uring the adjudicating period, [plaintiff]

23    was often noted to be depressed, anxious, tearful, emotionally restricted and labile, agitated,

24    restless irritable, angry, stressed, overwhelmed, guarded, tangential, and paranoid."  *Id*. at 22.[2]

25    26    27    28

---

[2] *See, e.g., id*. at 432 (self-harm thoughts, auditory hallucinations), 434 (attempted suicide, depressed), 436 (anxious, rocking back and forth), 440 (depressed, constricted affect), 441 (tangential thought process), 453 ("really depressed"), 480 (emotional and upset, labile affect), 499-500 (upset, emotional lability, tangential thinking and speech), 534 (cried intermittently, emotionally volatile and labile), 562 (anxious, hypomanic pressure of speech, flight of ideas), 729 (labile, depressed, irritable), 850 (anxious, blunted affect), 852 (dressed in pajamas with messing

1    The ALJ erred by sweeping aside the evidence supporting the examining physicians'

2 opinions while isolating only those findings supporting his conclusion. *See Gallant v. Heckler*,

3 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent

4 evidence in the record in order to justify her conclusion); *Diedrich v. Berryhill*, 874 F.3d 634,

5 642-43 (9th Cir. 2017) (ALJ erred by relying on evidence indicating an ability to function while

6 "ignoring competent evidence in the record that suggests an opposite result."); *see also Fiorello v.*

7 *Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly

8 every conflicting shred of medical testimony," she cannot simply selectively choose evidence in

9 the record that supports her conclusions); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.

10 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an

11 opposite conclusion.") (citation omitted).

12    The ALJ also concluded the examining opinions were inconsistent with "the general

13 effectiveness of the [plaintiff's] dialectical behavior therapy and psychotropic medications." AR

14 25. "Impairments that can be controlled effectively with medication are not disabling." *Warre v.*

15 *Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, "[r]eports of improvement'

16 in the context of mental health issues must be interpreted with an understanding of the patient's

17 overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th

18 Cir. 2014). In his decision, the ALJ cites evidence showing plaintiff described her medication as

19 helpful and that dialectical behavior therapy is "what saves my life."[3] AR 41.

20    While this evidence shows plaintiff benefited to some degree from her medication and

21 therapy, it does not demonstrate that her impairments are controlled with medication or improved

22 sufficiently to allow her to work. *See, e.g.,* AR 547 (reported medication was helpful, but also

23

24 grooming), 856 (describes paranoid thinking), 860 (disheveled, poor eye contact, psychomotor
retardation, paranoid thought content), 865 (same), 869 (paranoid thought content), 873
25 (moderate anxiety, obsessive and paranoid thought content, delusion, auditory hallucinations),
883 (severe anxiety, paranoia, delusions), 1151 (guarded, depressed, anxious, irritable, agitated).
26

27    [3] The court notes that plaintiff attempted suicide in February 2013. AR 554. Although
not entirely clearly, plaintiff may have literally meant that her therapy is the reason she has not
28 made any further attempts at suicide.

reporting that "[d]uring the week I feel depressed and down."); 874 (medication are helping with depression, but "she is still depressed, anxious, manic."); 884 ("meds are helping"). Furthermore, the ALJ does not identify anything in the record suggesting her symptoms sufficiently improved to allow her to work. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work").

The ALJ also concluded that the examining opinion evidence was inconsistent with plaintiff's reported activities, including her ability to help care for two young children, drive a car, live with others, volunteer at her children's school, go out to eat, perform light housework, and prepare simple meals. AR 25. The ALJ provides no explanation as to how the ability to perform these limited activities is inconsistent with any of the examining physicians' opinions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ "must set forth the reasoning behind [their] decisions in a way that allows for meaningful review."); *see also Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ is required to "provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled" to allow for meaningful judicial review). The lack of explanation is particularly troubling given that Dr. Barron, Dr. O'Dowd, and Dr. Kolakoski opined that plaintiff could perform part-time work but with significant restrictions. *Id*. at 543-44. The qualification that plaintiff's depression, anxiety, and medication, would necessitate an understanding supervisor when it comes to making independent evaluations or decisions or to timely complete tasks suggests that plaintiff would be essentially limited to a subsidized work setting in which poor decisions and an inability to work independently or to complete tasks timely are acceptable, but no vocational testimony in the record indicates the general availability of such a hypothetical employer.

Furthermore, while volunteering and caring for children can be mentally demanding, the record is nearly devoid of any details regarding plaintiff's performance of these activities. And the ALJ made no attempt to develop the record regarding plaintiff's child-rearing responsibilities or volunteer work. Indeed, at the administrative hearing plaintiff simply testified that she had two

young children and that she volunteered in one of their classes.  AR 43.  *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) ("Though the ALJ repeatedly pointed to Trevizo's responsibilities caring for her young adoptive children as a reason for rejecting her disability claim, the record provides no details as to what Trevizo's regular childcare activities involved. The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks . . . .  Absent specific details about Trevizo's childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with Dr. Galhotra's informed opinion, and thus the ALJ improperly relied on Trevizo's childcare activities to reject the treating physician opinion.").  Furthermore, the limited records references to plaintiff's childcare activities reflect that she received relatively significant assistance.  AR 579 (noting that a nurse comes to plaintiff's home to help with her children for 6 hours a day); 1150 (plaintiff's niece moved in with her to help care for plaintiff's children).

Lastly, the ALJ noted that a finding of disability is an ultimate issue that is reserved for the Commissioner.  This reason alone is not a permissible basis for rejecting the examining physicians' opinion that plaintiff was disabled, much less the functional limitations they assessed. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("[A]n ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability," but instead must provide specific and legitimate reasons supported by substantial evidence).

Accordingly, the ALJ erred in weighing the medical opinion evidence.  The matter will therefore be remanded for further consideration.[4]  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

---

[4]  Because the matter must be remanded based on the improper rejection of the examining physicians' opinions, the court declines to address plaintiff's additional arguments.

1    IV.    Conclusion

2           Accordingly, it is hereby ORDERED that:

3           1.  Plaintiff's motion for summary judgment is granted;

4           2.  The Commissioner's cross-motion for summary judgment is denied;

5           3.  The matter is remanded for further proceedings consistent with this order; and

6           4.  The Clerk is directed to enter judgment in plaintiff's favor and close the case.

7    DATED:  May 29, 2020.

8

9                                        EDMUND F. BRENNAN
                                         UNITED STATES MAGISTRATE JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          12